**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KIMBERLY GIARMO,

     Plaintiff,

                          Case No.  2:26-cv-11675
                          HON.

v


FRENCHTOWN CHARTER TOWNSHIP, MICHIGAN,
DAVID UHL, and ALAN VANWASHENOVA, in their individual
and official capacity

     Defendants

_____

DAVID M. ALCENIUS (P87557)
VANDEVEER GARZIA, P.C.
Attorney for Plaintiff
840 W. Long Lake Rd., Ste. 600
Troy, MI  48098-6340
(248) 312-2800 / Fax (248) 879-0042
dalcenius@vgpclaw.com

_____

## **COMPLAINT**

### **Trial by Jury Demanded**

NOW COMES Plaintiff, KIMBERLY GIARMO, by and through counsel, VANDEVEER GARZIA, P.C., and for her Complaint, states as follows:

## INTRODUCTION

1.      Kimberly Giarmo is a community organizer who resides in Frenchtown Charter Township, Michigan. Ms. Giarmo, a stage four cancer survivor, felt a call to action when Frenchtown Charter Township officials announced tentative plans to sell Township-owned property to Cloverleaf Infrastructure LLC, an artificial intelligence data center developer.

2.      On January 13, 2026, Frenchtown Charter Township through its Board passed an amendment to an industrial zoning ordinance for battery energy storage systems (hereafter "BESS"). BESS are used in a variety of applications for clean energy power generation and are often utilized in data centers to regulate power to the facility.

3.      Ms. Giarmo, with assistance from community members and local organizers, began gathering signatures for a petition to challenge the proposed zoning change under M.C.L. 125.3402.

4.      Ms. Giarmo began petitioning and gathering signatures on public sidewalks and parks within Frenchtown Charter Township in her belief that the BESS ordinance may be used in the anticipated artificial intelligence data center.

5.      While gathering signatures in the Township, Ms. Giarmo would pass out flyers to residents so that they could learn more about the

2

proposed artificial intelligence data center, the zoning ordinance amendment, and the dangers of BESS in general.

6.     Defendants do not respect Ms. Garmo's rights to spread her anti-data center message or her anti-BESS message and objected to the content of Ms. Giarmo's speech, so they violated her rights under color of law in an effort to curtail her expressive conduct. Ms. Giarmo's damages were proximately caused by the Defendants' acts and omissions.

7.     Mr. Giarmo brings this lawsuit to seek redress for violations of her constitutionally protected rights and to seek prospective relief against similar violations by the Defendants toward Ms. Giarmo or other similarly situated persons.

## JURISDICTION AND VENUE

8.     This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

9.     This action involves claims under 42 U.S.C. § 1983 for the deprivation of rights secured by the Constitution of the United States, as well as those rights protected from infringement and abuse under the Constitution and laws in the State of Michigan, under the color of law.

10.     This Honorable Court has jurisdiction over the federal claims asserted under 28 U.S.C. § 1331 and 1343. This Honorable Court has

3

ancillary and/or pendent jurisdiction under 28 U.S.C. § 1367. This Honorable Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 – 02.

11.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in Frenchtown Charter Township, Michigan, within this judicial district and at least some, if not all, Defendants are citizens domiciled within the judicial district.

## **PARTIES**

12.    Plaintiff, Kimberly Giarmo, is a citizen of Frenchtown Charter Township, Michigan and was at all times mentioned herein.

13.    Defendant Frenchtown Charter Township is a governmental body (municipal corporation) capable of suing and being sued. The Township is liable for its policies, customs, and ordinances, which violated Ms. Giarmo's rights, and for its failure to adequately train and/or supervise David Uhl and/or Alan VanWashenova to respect Ms. Giarmo's constitutionally protected rights.

14.    Defendant David Uhl is the Public Safety Director employed by Defendant Frenchtown Charter Township. He is sued in his individual and

4

official capacities for the deprivation of Ms. Giarmo's rights, privileges, and immunities. Uhl was acting under color of law when the violations occurred.

15. The Township Supervisor is responsible for overseeing and supervising the employee in the position of Public Safety Director in Frenchtown Charter Township.

16. Defendant Alan VanWashenova is the Township Supervisor and is elected by the citizenry of Frenchtown Charter Township and is employed by Defendant Frenchtown Charter Township. He is sued in his official and individual capacity for the deprivation of Ms. Giarmo's rights privileges, and immunities. VanWashenova was acting under color of law when the violations occurred.

## **FACTUAL HISTORY**

17. On or about January 13, 2026, Kimberly Giarmo went to Frenchtown Charter Township Hall to speak with her elected representatives regarding her concerns for the data center, the zoning ordinance amendment regarding BESS, and other concerns she had regarding Township administration.

18. Alan VanWashenova met with Ms. Giarmo to discuss her concerns.

5

19. One of Ms. Giarmo's concerns was that she knew Mr. VanWashenova was trying to sell his personal property for data center development and she was concerned that it may be a conflict of interest for Mr. VanWashenova to vote on policies or ordinances for said projects.

20. Mr. VanWashenova became irate during the meeting and began screaming vulgarities and profanities at Ms. Giarmo in the presence of the Township attorney, Kerry Bondy.

21. At the time of this meeting, Mr. VanWashenova's property in Frenchtown Charter Township was listed for sale for the express purpose of data center development.

22. That during the time alleged in this Complaint Mr. VanWashenova was expressly in favor of data center development in Frenchtown Charter Township and expected to financially gain from said developments.

23. During the time alleged in this Complaint, Mr. VanWashenova had supervisory power and control over Defendant Uhl as Supervisor of the Township.

24. On Friday, February 6, 2026 at approximately 1:30 p.m., Ms. Giarmo was engaged in peaceful expressive activity, gathering signatures for her BESS petition outside the Frenchtown Dixie Library on the public

6

sidewalk on the property but in no way impeding ingress or egress to the building.

25.    Frenchtown Dixie Library is public property.

26.    Friday, February 6, 2026, at 1:30 p.m. is within the regularly posted business hours of the Frenchtown Dixie Library.

27.    Ms. Giarmo had informed library staff that she would be on the sidewalk gathering signatures and library staff informed her she was permitted to petition on the sidewalk.

28.    The sidewalk around public property is a traditional public forum for the expression of free speech. *Pouillion v. City of Owosso,* 206 F.3d 711 (6th Cir. 2000).

29.    Ms. Giarmo was walking up and down the public sidewalk inviting guests of the library and nearby passersby to sign her BESS petition and to learn about the data center from Ms. Giarmo's flyer. Ms. Giarmo had posted on her community action group's Facebook page with the time when she would be at the Frenchtown Dixie Library and residents of the Township approached her.

30.    Ms. Giarmo was not abusive, threatening, or obstructionist at any point. Ms. Giarmo did not harass or harangue anyone. Ms. Giarmo

7

acted peacefully and spoke at reasonable volume typical for speaking on a public sidewalk.

31.   Ms. Giarmo did not engage in disorderly conduct or cause a disturbance.

32.   Ms. Giarmo did not ask anyone for money or financial support.

33.   Ms. Giarmo was present on public property during regularly posted business hours with legitimate business.

34.   At one point, due to the dangerously cold temperatures, Ms. Giarmo returned to her vehicle to warm herself.

35.   The problem began when David Uhl from Frenchtown Charter Township pulled up in an unmarked and/or decommissioned police vehicle and boxed in Ms. Giarmo's vehicle in the parking lot, unlawfully detaining her.

36.   Mr. Uhl yelled at Ms. Giarmo that she could not petition on any Frenchtown Charter Township property.

37.   Mr. Uhl told Ms. Giarmo that he and Alan VanWashenova had one of her colleagues, who was also gathering signatures for the BESS petition, removed from the sidewalk in front of Frenchtown Charter Township Hall.

8

38. Ms. Giarmo was aware that Mr. VanWashenova had approached her colleague, Paul Nagorski, while he was on the sidewalk at the Township Hall, as Mr. Nagorski communicated to her via text message that he had been threatened with arrest and left under duress that threat.

39. Mr. Uhl threatened Ms. Giarmo with arrest if she remained at the Frenchtown Dixie Library.

40. Mr. Uhl simply told Ms. Giarmo that she "couldn't do that here" when she asked why she was being asked to move.

41. Mr. Uhl offered no legal basis for his threats to Ms. Giarmo other than to say that the Township attorney had given him authority to remove her.

42. Instead, Mr. Uhl told Ms. Giarmo that deputies were on their way to arrest her if she did not move.

43. Fearing arrest or fines that may result in the revocation of her concealed carry license, Ms. Giarmo left the Frenchtown Dixie Library.

44. Mr. Uhl is a retired Monroe County Sheriff Deputy with over thirty years of law enforcement experience with that department.

45. Further, Mr. Uhl was the Chief of Police for the Village of Dundee.

9

46.   A reasonable officer in the same circumstances and possessing the same knowledge as Uhl could not have reasonably believed that he had reasonable suspicion to detain Ms. Giarmo for the commission of a crime.

47.   Mr. Uhl was acting under the color of law when he detained Ms. Giarmo as the Public Safety Director and purported to have authority from the Township to disburse Ms. Giarmo.

48.   Mr. Uhl used the unlawful detainment to tell Ms. Giarmo that she, "can not do that here," in apparent reference to her petitioning and flyer distribution.

49.   After unlawfully detaining Ms. Giarmo to yell at her, Mr. Uhl left the Frenchtown Dixie Library.

50.   Fearing for her safety and concerned about being arrested or being subjected to fines, Ms. Giarmo left the Frenchtown Dixie Library.

51.   Mr. Uhl lacked the legal authority or reasonable suspicion to detain Ms. Giarmo.

52.   Ms. Giarmo's freedom of speech and freedom of assembly were unlawfully curtailed and her rights violated.

53.   Ms. Giarmo's speech was chilled.

54.    Ms. Giarmo was subject to an illegal detainment in violation of law and her Fourth Amendment rights.

55.    Ms. Giarmo felt violated by the illegal detainment.

56.    Defendants had no basis to prohibit Ms. Giarmo from continuing to engage in expressive activity.

57.    Ms. Giarmo was threatened with arrest or fine if she did not leave the Frenchtown Dixie Library or follow Mr. Uhl's unlawful commands.

58.    Upon information and belief, Defendants prohibited Ms. Giarmo's speech because they disagreed with the content of her message.

## CAUSES OF ACTION

### Count I: First Amendment Freedom of Speech and 42 U.S.C. § 1983

59.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs

60.    Public sidewalks are quintessential public forums where the First Amendment protects individuals' rights to speak, exchange political opinions, and protest.

61.    Defendants' actions have deprived Plaintiff of her First Amendment right to protest and assemble on public sidewalks in Frenchtown Charter Township.

11

62.    Government officials acting under color of state law are liable at law and equity under 42 U.S.C. § 1983 for violating rights guaranteed by the United States Constitution. *Simescu v. Emmet Cnty. Dep't. of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

63.    At all times relevant to this Complaint, Frenchtown Charter Township acted under color of state law because it is a public body.

64.    At all times relevant to this Complaint, the other Defendants acted under color of state law by conspiring and acting in concert with each other and Frenchtown Charter Township to manage access to public sidewalks and/or other traditional public forums within Frenchtown Charter Township.

65.    Mr. Uhl and Mr. VanWashenova violated Plaintiff's clearly established First Amendment rights when they prohibited Plaintiff and other members of her community action group from petitioning on public sidewalks in Frenchtown Charter Township.

66.    Defendants' actions, policies, and practices as described were a direct and proximate cause of the violation of Plaintiff's rights under the First Amendment to the United States Constitution and to Sections 3 and 5 of the Michigan Constitution.

12

67. The First Amendment to the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

68. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

69. The Constitution of the State of Michigan, effective January 1, 1964, provides in part:

MCL CONSTITUTION-I, ARTICLE I, § 3: Assembly, consultation, instruction, petition.

The people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances.

MCL CONSTITUTION-I, ARTICLE I, § 5: Freedom of speech and of press.

Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.

MCL CONSTITUTION-I, ARTICLE I, § 17: Self-incrimination; due process of law; fair treatment at investigations.

No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

70.   The Michigan Constitution of 1963 affords the same equal protection rights as the United States Constitution. *Palmer v. Bloomfield Hills Bd. of Educ.*, 164 Mich. App. 573, 417 N.W.2d 505 (1987). "Fundamental rights include the right to vote and travel, due process in criminal matters, and the specific guarantees of the Bill of Rights." *Id*.

71.   Speaking and petitioning on behalf of a cause of public concern, in this case data center development next to a State Park and subdivision and proposed ordinance amendments for BESS, is the epitome of protected free speech.

72.   It is clearly established that the First Amendment protects expression on public issues. *Synder v. Phelps*, 562 U.S. 443, 451-52 (2011).

### Count II: Fourth Amendment and Unlawful Detainment

73.   Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs

14

74.    Defendants' actions as described were a direct and proximate cause of the violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution as well as Section 17 of the Michigan Constitution.

75.    Mr. Uhl's use of an unmarked and/or decommissioned police vehicle to box in Ms. Giarmo's vehicle to detain her for her speech was an illegal detainment in violation of the Fourth Amendment.

76.    Ms. Giarmo did not feel free to leave during the encounter.

77.    Ms. Giarmo's vehicle could not be driven away from the scene while it was boxed into the parking space.

78.    Mr. Uhl had no reasonable suspicion to seize Ms. Giarmo nor probable cause to hold her, as she was merely petitioning on the sidewalk and no visible crime had been committed.

79.    No person may be detained for exercising their First Amendment right to speak or petition. *Watchtower Bible & Tract Soc'y of N.Y., Inc., v. Vill. Of Stratton*, 536 U.S. 150, 165-67 (2002).

80.    A person is seized whenever officials restrain his or her freedom of movement such that he or she is not free to leave. *Manuel v. City of Joliet*, 580 U.S. 357, 137 S. Ct. 911 (2017) citing *Bailey* v. *United*

15

*States*, 568 U. S. 186, 192, 568 U.S. 186, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013).

81.   A seizure under the Fourth Amendment is only "reasonable" when there is probable cause that a crime has been committed. *Id.*

82.   Defendants' actions as described were a direct and proximate cause of the violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution as well as Section 17 of the Michigan Constitution.

**Count III: Fourteenth Amendment and Unlawful Prior Restraints**

83.   Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs

84.   Ms. Giarmo was targeted on the basis of her speech and Defendant's objections to the content of her message.

85.   Defendants Uhl's and VanWashenova's actions were taken undertaken under the color of state law and violated Ms. Giarmo's clearly established constitutional rights to free speech, assembly, and protection from unreasonable searches and seizures.

86.   At the time of the violations of Ms. Giarmo's First Amendment rights on February 6, 2026, Frenchtown Charter Township did not have any

16

policies, procedures, or ordinances governing petitioning in public spaces such as on sidewalks.

87.     Prior to February 6, 2026, Frenchtown Charter Township permitted gubernatorial candidates Anthony Hudson and Thomas Leonard to campaign *inside the Township Hall* before and after Township Board meetings.

88.     Yet, the Township and Public Safety Director David Uhl arbitrarily and capriciously decided to harass Ms. Giarmo for asserting her speech that both the Township and Defendants Uhl and VanWashenova disagreed with.

89.     During a subsequent encounter with Ms. Giarmo on the same date as the incident at the North Dixie Library, Mr. Uhl called the Monroe County Sheriff's Office to try to chase Ms. Giarmo off of another public sidewalk in front of the Township Hall.

90.     During the phone call to Central Dispatch for Monroe County, Mr. Uhl stated that there was an unruly protestor on the sidewalk.

91.     Mr. Uhl stated that the "protestor" was "against the data center" and he wanted them removed.

92.     Mr. Uhl told the dispatcher that he had "talked with the Sheriff about this."

17

93.   Mr. Uhl's conduct in acting both as an agent of the Township at the Frenchtown Dixie Library was motivated by viewpoint discrimination against the content of Ms. Giarmo's speech.

94.   Mr. Uhl injured Ms. Giarmo by violating her well-established First Amendment right to engage in free expression on the basis of the content of her speech, entitling Ms. Giarmo to declaratory relief and compensatory damages, including at least nominal damages against Mr. Uhl.

95.   Mr. VanWashenova and Mr. Uhl conspired to deprive Ms. Giarmo of her well-established First Amendment right to engage in free expression based on the content of her speech, entitling Ms. Giarmo to declaratory relief and compensatory damages, including at least nominal damages against Mr. VanWashenova and Mr. Uhl.

96.   Banning or restricting a person's speech on the basis of its contents is a system of prior restraint in violation of clearly established First and Fourteenth Amendment rights. *Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019). Prior restraints are permissible, if at all, only where they are issued according to "narrow, objective, and definitive standards[.]" *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-151 (1969). An agent of a governmental entity or a police officer may create an unlawful

prior restraint through threats of prosecution. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 60-71 (1963).

97.    Michigan's law on prior restraint is similar to the federal precepts: prior restraint is presumptively invalid. *City of Cadillac v. Cadillac News & Video*, 221 Mich. App. 645, 562 N.W.2d 267 (1997) citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 60-71 (1963).

98.    It is well-established that the First Amendment protects "verbal criticism and challenge directed at police officers." *Houston v. Hill,* 482 U.S. 451, 461-62 (1987). The refusal to follow an unlawful directive to stop lawful but disfavored speech cannot serve as grounds for law enforcement action. Similarly, the refusal to stop speaking, not to answer questions, or to keep making the expressive conduct is not disobedience of a lawful order or disorderly conduct, nor can it serve as grounds for an officer to demand the speaker's removal.

99.    The Township was advised on February 16, 2026, of the violation of Ms. Giarmo's rights as plead above, and a formal apology was demanded from Defendants in lieu of a lawsuit.

100.    Frenchtown Charter Township, through members of its Board, continued to tell Ms. Giarmo that she will be prosecuted if she attempts to petition on public sidewalks in the Township in the future.

101. Defendant Township was afforded the opportunity to clarify its practices, policies, and procedures with Ms. Giarmo's Counsel, but Defendant failed to meaningfully respond, thus exhibiting continued indifference to the continuing limitations on Ms. Giarmo's right to access a traditional public forum to engage in protected speech.

102. Defendants rejected Plaintiff's reasonable pre-litigation demands and declined to institute any remedies for the violations of the Constitution.

103. The Township's policy and practice permitted Ms. Giarmo to petition on public sidewalks, yet the Township arbitrarily and capriciously enacted a prior restraint on Ms. Giarmo that violated her right of free speech and freedom of assembly to petition the government on any subject.

104. Due to Defendants' imposition of an arbitrary and capricious prior restraint on Ms. Giarmo, without due process of law in a malicious, oppressive, and in reckless disregard of Ms. Giarmo's well-established rights, Ms. Giarmo is entitled to punitive damages against each.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for the following relief:

A.      Declaratory relief, declaring the actions of Defendants unconstitutional and that Frenchtown Charter Township violated its own policies, procedures, and common practices in its application;

B.      Recission, revocation, and termination of all "trespass" orders, warnings, and records pertaining to Ms. Giarmo and any public property within Frenchtown Charter Township, Michigan;

C.      Compensatory damages in an amount to be determined at Trial;

D.      Punitive damages against the individual Defendants for their malicious, oppressive, conduct that was in reckless disregard of Ms. Giarmo's well-established rights;

E.      Prospective injunctive relief affirming and protecting Ms. Giarmo's right to distribute flyers and to petition in public spaces, to peacefully communicate a political message to others, to not be unjustly compelled to disburse, and to not be subject to unlawful detentions for doing so in the future;

F.       Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

21

G.     Any other relief that this Honorable Court and jury deems just and proper.

Respectfully Submitted,

VANDEVEER GARZIA, P.C.

By:  /s/ *David M. Alcenius*
DAVID M. ALCENIUS (P87557)
Attorney for Plaintiff
840 W. Long Lake Rd., Ste. 600
Troy, MI 48098-6340
(248) 312-2800
dalcenius@vgpclaw.com

Dated: May 21, 2026